The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Raphael S. TRUJILLO, Defendant–Appellant.

No. 93CA1990.

Colorado Court of Appeals, Div. I.

Jan. 25, 1996.

Rehearing Denied Feb. 22, 1996.

Certiorari Denied Sept. 9, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Sandra K. Mills, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Raphael Trujillo, appeals from the judgment of conviction entered on a jury verdict finding him guilty of two counts of sexual assault on a child by one in a position of trust. We affirm and remand with directions.

According to the prosecution's evidence presented at the pre-trial hearing, in April 1992, the victim, defendant's stepdaughter, then age six, told her two friends who were ten and eleven years old, that "after school some days [she and defendant] would take their clothes off and then they would lick and touch each other." The victim told her friends not to tell anyone because defendant had said if she did, he would hurt her and the person she told.

Both friends reported the victim's statements to their mothers and one mother called the department of social services.

This initiated an extensive investigation by police and social services involving interviews with the victim and defendant's natural daughter (second victim) then age four, physical examination of the children by a doctor, and reports by foster care providers.

The children's statements in these interviews were inconsistent, sometimes indicating improper actions by defendant, but other times denying that any abuse had occurred.

Following a lengthy pre-trial hearing, the trial court found both children competent to testify at trial.

At trial, the first victim, who was then seven years old, testified that she did not recall anyone touching her on her private parts, and she further denied that defendant had touched her. The second victim, then six years old, similarly testified that defendant did not touch her private parts.

The victims' mother testified that the children never told her that defendant had sexually assaulted them and that the first victim had told her it was a lie she made up because defendant treated her sister better than he treated her.

However, two therapists testified. One testified that the first victim had told her defendant had touched her. The other ther-

apist testified that both victims denied having been touched by defendant. The convictions at issue resulted.

## I.

■ Defendant first contends that the trial court abused its discretion in restricting the scope of his cross-examination of the second victim at the competency hearing. We disagree that the trial court's refusal to allow the defendant the latitude he sought in cross-examination at the competency hearing constitutes an abuse of discretion and requires a reversal of his conviction as to that victim.

Initially, we address the relevancy of the competency ruling, given the fact that the trial testimony of the second victim in itself did not prejudice the defendant. She denied that he had touched her private parts. Nevertheless, the trial court's finding that the second victim was competent to testify was significant.

Section 13–25–129, C.R.S. (1987 Repl.Vol. 6A) provides that if, as here, a child-victim is "available" as a witness and testifies at the proceedings, the prosecution may introduce her out-of-court statements through the testimony of other witnesses only after convincing the court "that the time, content and circumstances of the statement provide sufficient safeguards of reliability. . . ." Section 13–25–129(1)(a).

However, if the child-victim is unavailable, which is the case if she is found incompetent, her hearsay statements may not be admitted also without "corroborative evidence of the act which is the subject of the statement." Section § 13–25–129(1)(b)(II). *See Stevens v. People,* 796 P.2d 946 (Colo.1990).

Thus, here, the defendant asserts prejudice because the trial court's finding of competency permitted introduction of the second victim's hearsay statements without the additional requirement of corroboration.

■ Section 13–90–106(1)(b)(I), C.R.S. (1987 Repl.Vol. 6A), establishes the general principle that children under the age of ten are incompetent to testify if they "appear incapable of receiving just impressions of the facts respecting which they are examined or

of relating them truly." However, an exception applies in proceedings for sexual assault. Under § 13–90–106(1)(b)(II), C.R.S. (1995 Cum.Supp.), a child is competent to testify if "the child is able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined." *See People v. Seacrist,* 874 P.2d 438 (Colo.App.1993). Subsection 13–90–106(1)(b)(II) thus abolished the presumption that child victims of abuse are incompetent to testify. *See People v. District Court,* 791 P.2d 682 (Colo.1990).

■ Determining the competency of a witness of tender years is ordinarily for the trial court, and unless there is an abuse of discretion, a ruling on that question will not be disturbed on review. *People v. Aldrich,* 849 P.2d 821 (Colo.App.1992).

Colorado appellate decisions are inconclusive on the issue whether our competency statute simply allows, or specifically requires, child witnesses to be asked about the facts of the alleged offense in order to determine whether they are competent to testify at trial.

In *People v. District Court,* 776 P.2d 1083 (Colo.1989) and *People v. District Court,* 791 P.2d 682 (Colo.1990), the supreme court reiterated the principle that child-witnesses must be able to describe or relate in age-appropriate language the events to which they will testify at trial. However, we do not read either case as *requiring* that child-witnesses be interrogated about the events of the criminal offense before being declared competent to testify. *See also People v. Vialpando,* 804 P.2d 219 (Colo.App.1990) (trial court did not abuse its discretion in finding child competent to testify where child: (1) knew her grade in school; (2) knew defendant by his first name; (3) knew that the day of the assault was "Bronco" day; (4) knew the difference between the truth and a lie and the consequences for telling one or the other; and (5) told the court that she promised to tell the truth; neither counsel questioned the child's ability to observe and relate facts accurately).

Other jurisdictions are divided on the issue.

For example, in Minnesota, trial courts are prohibited from questioning a child about the specifics of the anticipated testimony in a competency hearing. In *State v. Scott*, 501 N.W.2d 608, 615 (Minn.1993), the court stated:

> In a competency hearing, a child is not to be questioned about the specifics of the anticipated testimony.... Although competency has to do with the witness' ability to remember and relate events ... this means the ability to remember and relate events *generally*, not the specific events which lie at the heart of the case. (Original emphasis)

In reaching its conclusion, the Minnesota court found instructive the United States Supreme Court's opinion in *Kentucky v. Stincer*, 482 U.S. 730, 741–42, 107 S.Ct. 2658, 2665–66, 96 L.Ed.2d 631, 644–45 (1987). There, after holding that exclusion of the defendant from a witness' competency hearing did not violate his Sixth Amendment right to confront the witnesses against him, the Court stated that "questions at a competency hearing usually are limited to matters that are unrelated to the basic issues of the trial." *See Commonwealth v. Gamache*, 35 Mass.App. 805, 626 N.E.2d 616 (1993) (court acted correctly in not requiring child-witness' competence to rest on a recall of events and circumstances of crime; only general ability to observe and remember is required); *State v. Cobb*, 81 Ohio App.3d 179, 610 N.E.2d 1009 (1991) (court did not err in finding child victim competent, despite failure specifically to ask victim questions related to charged offense).

However, other jurisdictions have held that, in determining whether a child is competent, the trial court must consider the child-witness' ability to receive accurate impressions of fact or to observe acts about which he or she will testify. *See State v. Frazier*, 61 Ohio St.3d 247, 574 N.E.2d 483 (1991); *Dufrene v. State*, 853 S.W.2d 86, 88 (Tex.App.1993) (child considered competent to testify unless it appears he or she "does not possess sufficient intellect to relate the transaction about which [he or] she will testify"; court must consider capacity of child to

recollect the events). *See generally* 60 A.L.R.4th 369 (1988).

■ We hold that questioning a child-witness about the actual events of the charged offense is not required before a determination of his or her competency can be made. Nor is such testimony precluded as a matter of law. Rather, we conclude that the manner and scope of examination should be left to the sound discretion of the trial court. *See People v. District Court*, 776 P.2d 1083, 1088 n. 4 (Colo.1989) ("the trial court has broad discretion in determining how a competency hearing will be held").

Here, at the time the second victim testified at the competency hearing, she was almost six. In response to questions asked by the prosecutor she was able to relate her name, the spelling of her name, her age at the time and in previous years, her birthday, her grade at school, and other age-appropriate information. She understood the differences between truth and a lie, and she promised to tell the truth in the courtroom.

Although the court prohibited defense counsel from specifically asking this victim about the particular facts surrounding the offense, it nevertheless allowed general questions about her "private parts," and whether anyone had ever touched her there, in order to determine the language victim would use in talking about such things. It then concluded that the victim was competent to testify, finding she was able adequately to relate events or facts, knew the difference between the truth and a lie, knew the importance of telling the truth, and was able to relate sequences of events.

Because the victim was able to relate the "events or facts upon which she was examined," we conclude that the trial court did not abuse its discretion in limiting defendant's cross-examination of this victim about the alleged acts of sexual assault at the competency hearing or in finding her competent to testify at trial.

Given this conclusion, we also reject defendant's related argument that, because the testimony regarding the second victim was intricately interwoven with the testimony regarding the alleged assault against the first

victim, his conviction for sexual assault against the first victim must be reversed.

## II.

Defendant next contends the trial court erred in finding certain hearsay statements made by the victims to be reliable under § 13–25–129, C.R.S. (1987 Repl.Vol. 6A). Again, we disagree.

Section 13–25–129 provides for the admission of otherwise inadmissible hearsay statements of child sexual assault victims describing the abuse, if the court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. *See People v. Williams*, 899 P.2d 306 (Colo.App.1995).

Under § 13–25–129(1), a child's out-of-court statements relating to sexual abuse are admissible if they are reliable and the child either testifies at trial or is unavailable to testify but there is corroborative evidence supporting the out-of-court statements. *See People v. Williams, supra.*

■ In determining the reliability of a child's statement under § 13–25–129, the trial court may consider: (1) whether the statement was made spontaneously; (2) whether the statement was made while the child was still upset or in pain from the alleged abuse; (3) whether the language of the statement was likely to have been used by a child the age of the declarant; (4) whether the allegation was made in response to a leading question; (5) whether the child or the hearsay witness has any bias against the defendant or any motive for lying; (6) whether any other event occurred between the time of the abuse and the time of the statement which could account for the contents of the statement; (7) whether more than one person heard the statement; and (8) the general character of the child. *See People v. Dill*, 904 P.2d 1367 (Colo.App. 1995), *cert. granted,* October 30, 1995.

These factors are not an immutable set of standards for the trial court to consider in determining whether the standard of "sufficient indicia of reliability" has been met. Thus, they should not be used to foreclose admissibility on the basis that a factor has not been satisfied. *See People v. District Court, supra.*

■ A trial court's findings concerning reliability of a child-victim's out-of-court statements will not be disturbed on appeal if they are supported by the record. *See People v. Serna,* 738 P.2d 802 (Colo.App.1987).

### A.

■ We reject defendant's first assertion that the trial court erred in admitting statements made by the second victim to her foster mother. Defendant contends these statements were unreliable because they were not spontaneous.

At the pre-trial hearing, the children's foster mother testified that during a rest time, she noticed every time she walked by the second victim's room, the victim had her hand down her pants. According to the foster mother, she went into the victim's room and asked the victim if anyone had ever touched her in her private parts or hurt her. The victim initially did not say anything, but then confessed that defendant had "put his hand in her pants and it hurt and he told her not to tell."

Since the statements were made in response to an open-ended question and the victim used age-appropriate language, the record supports the trial court's conclusion that there were sufficient safeguards of reliability.

### B.

■ Similarly, the trial court did not err in finding reliable the statements made by the first victim to her two friends because the children reported dramatically different versions of the event.

At the pre-trial hearing, one young witness testified that she was playing with the victim and another friend when the victim suddenly asked if she could tell them something. The victim then proceeded to tell them about the abuse, revealing that defendant would pick her up from school early and that they would take off their clothes and "lick each other all over." The witness further testified that the

victim said, by "all over" she meant her "private areas" and stated that the victim told her not to tell anyone because defendant had said he would hurt her and the person she told. The child-witness also testified that the victim was crying and hysterical and "practically screaming."

Another child witness testified that the victim had told them defendant had "been touching her all over" and that, while no one was home, she and defendant would take off their clothes and the defendant would touch and kiss her all over. She also testified that the victim pointed to her breast, her "butt," and her vagina to indicate where "all over" was. According to this witness, the victim was not hysterical, but was acting very sad, was pale, and had tears in her eyes. Finally, she testified that the victim "begged" her not to tell anyone, saying defendant would kill her if she told.

Here, although the witnesses described victim's demeanor differently, the substance of their statements was similar. In addition, the statements were spontaneous, were made in age-appropriate language and were not in response to any leading questions. Thus, again, there is record support for the trial court's findings.

## C.

■ Finally, defendant contends the trial court erred in admitting statements made by the second victim to a caseworker for social services who interrogated her at the police station. We disagree.

At the pre-trial hearing, the caseworker testified that she was sitting in the juvenile detective area when the second victim asked her if she could talk. She and the victim then went into a detective's cubicle where the caseworker asked the victim if she knew why she had seen the doctor at the hospital. The victim responded, "Yeah, because [defendant] touched me." When the caseworker asked her what defendant had touched, the victim said, "my private parts." The caseworker then asked the victim how defendant had touched her, and she replied, "with his dirty fingers." The case worker asked the victim how defendant touched her with his fingers

and the victim demonstrated, taking her own right first finger and actually sticking it up by her vaginal area. The victim then said, "He puts them inside my 'gina.'"

Although defendant claims these statements were unreliable because they were not made spontaneously, the record shows that the victim initiated the discussion. And, although the victim had responded to the social worker's initial question, the victim's later answers were not made in response to any leading questions.

Again, because there is record support for the trial court's findings, we conclude it did not err in finding the statements reliable.

## III.

■ Defendant next contends the trial court erred in denying his motion to recall the child victims after they had testified during the competency hearing. We disagree.

At the hearing, defendant sought to recall both victims to testify that they denied the assaults and their statements regarding the assaults. The trial court denied defendant's motion, finding the prosecution had stipulated to the fact that the children would recant and that, therefore, there was no purpose in recalling them to testify and subjecting them to additional trauma.

In light of the stipulation made by the prosecutor, we conclude the trial court's ruling not to allow further testimony on this issue was not an abuse of discretion.

## IV.

Finally, defendant contends the trial court erred in imposing a sex offender surcharge. The People concede this error based upon *People v. Salas*, 902 P.2d 398 (Colo.App. 1994), which was announced after the conclusion of these proceedings.

The judgment is affirmed, and the cause is remanded with directions to the trial court to amend the mittimus by deleting the sex offender surcharge.

METZGER and CRISWELL, JJ., concur.